UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE COSSIO, JR., | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 7746 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| JOHN TOURTELOT, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jose Cossio Jr., a former employee of Cook County, sued the County along with a state court judge, the Cook County Sheriff's office, and several county officials after he was fired for falsifying his employment application and for not cooperating with the County's investigation into his military record. The gist of the complaint (now on a Second Amended Complaint) is that the Defendants unlawfully accessed and disclosed Cossio's military criminal history, which in turn led to his procedurally unfair termination. R. 15, Second Am. Compl.[1] All of the Defendants, except for the state court judge, John Tourtelot, were eventually dismissed. *See* R. 57 (district court opinion dismissing all defendants); R. 99, Seventh Circuit Appeal at 7 (vacating the prior judgment only as to Tourtelot and remanding for further

---

[1]This Court has subject matter jurisdiction over the federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. Citations to the record are noted as "R." followed by the docket number, and when necessary, the page or paragraph number. Because Cossio attached several documents as a single exhibit to his response to Tourtelot's motion, when referring to those documents, the Court uses the Bates stamp ("COSSIO" followed by the page number) on the bottom left-hand corner of those documents.

proceedings). Against Tourtelot specifically, Cossio alleges violations of the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment. After several months of discovery, Tourtelot moved for summary judgment against the claims. R. 223, Def.'s Mot. Summ. J. After the summary judgment motion was fully briefed, Cossio filed a motion to amend his complaint. R. 228, Pl.'s Mot. Amend Compl. The Court addresses each motion in turn.

## I. Background

In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Tourtelot argues, though, that Cossio failed to comply with Local Rule 56.1, and thus the Court should accept Tourtelot's version of the facts as admitted. R. 227, Def.'s Reply Br. at 2-3. Before summarizing the facts of this case, the Court first addresses this threshold argument.

### A. Local Rule 56.1

Local Rule 56.1 governs motions for summary judgment in this District. The rule requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." L.R. 56.1(a)(3). The non-moving party then must respond to "each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(B). This means the non-moving party must "admit or deny each factual statement proffered by the [moving party] and ... designate with specificity and

2

particularity those material facts believed to establish a genuine dispute for trial." *Greer v. Bd. of Educ. of the City of Chi., Ill.*, 267 F.3d 723, 727 (7th Cir. 2001). If the non-moving party wishes to present additional facts, then it must do so in its own "statement, consisting of short numbered paragraphs" supported by citations to the record. L.R. 56.1(b)(3)(C). The moving party may submit a concise reply to the opposing party's statement of additional facts. L.R. 56.1(a). All material facts set forth in the *moving* party's statement will be deemed admitted "unless controverted by the statement of the opposing party." L.R. 56.1(b)(3)(C). Likewise, all material facts set forth in the *non-moving* party's statement of additional facts will be deemed admitted "unless controverted by the statement of the moving party." L.R. 56.1(a). Complying with Local Rule 56.1 is not a mere technicality, and if a party fails to comply, courts are not obliged to "scour the record looking for factual disputes." *Greer*, 267 F.3d at 727.

Tourtelot argues that Cossio failed to comply with Local Rule 56.1(b)(3)(A) (Cossio's response to Tourtelot's statement) and 56.1(b)(3)(C) (Cossio's statement of additional facts). Def.'s Reply Br. at 2. On the first problem—Cossio's response to Tourtelot's statement—Tourtelot is right. Cossio neither admitted nor denied any of the numbered paragraphs in Tourtelot's statement as required by Rule 56.1(b)(3)(A). It is true that Cossio is litigating the case *pro se*, but *pro se* litigants are expected to follow Rule 56.1, so the Court deems Tourtelot's statement of facts as admitted. *Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016) (affirming application of Local Rule 56.1 to a *pro se* litigant to deem the defendant's facts as admitted); *Greer*, 267 F.3d at

3

727 (same); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"). What's more, Tourtelot served Cossio with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" pursuant to Local Rule 56.2, which explained the requirements of Local Rule 56.1 and warned Cossio that his failure to properly rebut the facts in Tourtelot's statement would result in those facts being deemed admitted. *See* R. 225-1. Despite this notice, Cossio still failed to comply, so the Court deems Tourtelot's statement of facts as admitted. *See Greer*, 267 F.3d at 727.

When it comes to Cossio's statement of additional material facts, however, Tourtelot is mistaken. Attached to Cossio's reply brief was a statement of additional facts containing citations to the record in apparent compliance with Local Rule 56.1(b)(3)(C). *See* R. 226-2, PSOAF.[2] In what appears to be an oversight, Tourtelot missed this filing and failed to respond to Cossio's additional statement of facts. In this odd situation, the Court deems Tourtelot's statement of facts as admitted, but also will consider Cossio's additional statement of facts (so long as the factual assertions are supported by the citations to the record). As explained in further detail below, however, even if the Court considers these additional facts in evaluating the

---

[2]Citations to the parties' Local Rule 56.1 Statements of Fact are "DSOF" for Judge Tourtelot's Statement of Facts [R. 225]; and "PSOAF" for Cossio's Statement of Additional Facts [R.226-2].

summary judgment motion, they do not actually controvert the material facts in Tourtelot's statement.[3]

### B. Factual Background

The pertinent facts, stated as favorably to Cossio as the record and Local Rule 56.1 allow, are as follows: Cossio was a fleet manager at the Cook County Bureau of Administration from 2013 until he was fired in October 2014. R. 225, DSOF ¶ 2; PSOAF ¶ 2. The story of his discharge started in July 2014, when Cossio appeared as a litigant before Cook County Circuit Court Judge Tourtelot for a hearing on a petition for an order of protection against Cossio. DSOF ¶¶ 1, 3; PSOAF ¶¶ 1, 3. Later that day, Tourtelot reported a suspicious call to the Cook County Sheriff's Office. DSOF ¶ 4; PSOAF ¶ 7. Tourtelot reported that the call came from phone number (312) 339-6000[4] to his personal phone and that he thought that Cossio might have made the call.[5] DSOF ¶ 4.

---

[3] It is worth nothing that Cossio's response brief does not cite to 56.1 statements, but instead either cites directly to the record or to nothing at all. *See generally* R. 226, Pl.'s Resp. Br. Any facts that were not presented in Cossio's Rule 56.1 submissions are disregarded in resolving the summary judgment motion, because it undermines Local Rule 56.1's requirement that the facts and record cites be presented in a way that allows the parties and the Court to efficiently discern what is genuinely disputed.

[4] It turns out that the phone number that called Tourtelot's phone was actually (*8*12) 339-6000, which belongs to Author Solutions, a company that Tourtelot retained to publish his granddaughter's book in 2013. PSOAF ¶¶ 13- 14.

[5] In an attempt to point out inconsistencies in Tourtelot's written discovery responses, Cossio contends that Tourtelot first denied disclosing to the Cook County Sheriff's Office that Cossio was employed by Cook County, and then later admitted this fact. PSOAF ¶ 8 (citing R. 226-1, Def.'s Answer's to Pl.'s Request to Admit at COSSIO 6 ¶ 13); *id*. ¶ 9 (citing R. 226-1, Def.'s, Resp. Pl.'s Second Set of Interrogatories at COSSIO 12 ¶ 1).

After reading both written responses, it is apparent that Cossio either misread or misunderstood Tourtelot's responses. In Tourtelot's Response to Cossio's Second Set of Interrogatories (COSSIO 12 ¶ 1), Tourtelot admitted that he informed the Cook County Circuit Court Department of Judicial Security, *not* the Sheriff's Office, that Cossio was employed by Cook County. And in line with this answer, in Tortelout's Answer to Cossio's

The Cook County Sheriff's Office then emailed the Department of Homeland Security, alerting them of the call. DSOF ¶ 5; PSOAF ¶ 5. Homeland Security in turn forwarded that email to the Cook County Human Resources and the Office of the President of Cook County's Board of Commissioners. DSOF ¶ 5. Eventually, the report about the suspicious call made its way to Cossio's boss and the Cook County Office of the Independent Inspector General (often referred to by the acronym "IG"). PSOAF ¶ 5. The suspicious-call report led the IG to investigate Cossio, including digging up Cossio's criminal history. DSOF ¶ 6. Significantly, Tourtelot neither performed nor instructed the IG, or anyone else, to investigate Cossio's criminal history or his court-martial convictions. DSOF ¶ 9.

During the investigation, the IG discovered that Cossio had military convictions that he had not disclosed on his employment application. DSOF ¶ 6. The IG recommended that the Bureau of Administration fire Cossio. *Id.* The Bureau accepted the IG's recommendation, held a pre-disciplinary hearing, and terminated Cossio's employment for falsifying his employment records and not cooperating with the investigation. *Id.*; PSOAF ¶ 15; COSSIO 99-100; COSSIO 115. Cossio later appealed his firing to the Cook County Employee Appeals Board, which upheld his termination. DSOF ¶ 7.

---

Request to Admit (COSSIO 6 ¶ 13), Tortelout denied disclosing Cossio's place of employment during Tortelout's initial complaint to the Sheriff's Office. Either way, whether or not Tourtelot actually told the Sheriff's Office where Cossio worked is immaterial to deciding the summary judgment motion.

## II. Legal Standard

### A. Motion to Amend Complaint

Even after a party has used up its as-of-right amendment to the original complaint, district courts still "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). But leave to amend is not automatic. *See Airborne Beepers & Video Inc. v. AT&T Mobility LLC*, 499 F.3d 633, 666 (7th Cir. 2007). Indeed, "[d]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Johnson v. Cypress Hill*, 641 F.3d 867, 871-72 (7th Cir. 2011) (cleaned up)[6]; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). And although delay alone usually does not warrant denying leave to amend, the "longer the delay, the greater the presumption against granting leave to amend." *Johnson*, 641 F.3d at 872 (cleaned up). Ultimately, "[t]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir.2008) (cleaned up).

### B. Motion for Summary Judgment

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the

---

[6]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

7

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

Tourtelot argues that he is entitled to summary judgment on both the due process claim and the illegal-search claim because he was not personally involved in either the job-termination proceedings or in the alleged search of Cossio's criminal history. Two days after the summary judgment motion was fully briefed, Cossio filed a motion for leave to file a third amended complaint. Before getting to the summary judgment arguments, the Court first addresses the motion for leave to amend.

8

## A. Motion to Amend

Cossio filed this action in September 2015. R. 1, Compl. Two months later, he filed a second amended complaint (which is the current complaint). Second Am. Compl. Since then, Cossio has filed seven motions for leave to file a third amended complaint, not including the current motion. *See* R. 26, 46, 74, 105, 123, 152, 213. All of these attempts have either been denied or voluntarily withdrawn. *See* R. 28, 50, 77, 110, 130, 193, 215. Now on his eighth attempt, Cossio wishes to make the following changes: (1) remove the County as a named defendant; (2) separate the due process claim from the unlawful-search claim; and (3) clarify his due-process theory. Pl.'s Mot. Amend Compl. at 1.

As Tourtelot points out, the first two changes are superficial and unnecessary. R. 231, Def.'s Resp. Br. ¶ 2 (citing R. 28, Order). The proposed changes do not substantially change the allegations in the operative complaint, and are not so important to warrant an amended complaint. What's more, Tourtelot's summary judgment motion already addresses the due-process claim and the illegal-search claim separately, so there is no reason to separate the two after summary judgment has already been briefed.

On the third proposed change, to the extent that Cossio's "loss of reputation" theory is a new theory of liability, the motion is denied. If Cossio wanted to amend his complaint to introduce a new theory, then he had ample time and opportunity to do so. Indeed, the proposed amendment is not based on any new information that was just recently discovered. Allowing Cossio to introduce a new theory at this stage in

the litigation would certainly prejudice Tourtelot, who has already fully briefed the summary judgment motion based on the allegations in the Second Amended Complaint.

Cossio argues, though, that loss of reputation is not a new theory or claim, and instead is alleged in the operative complaint. Pl.'s Mot. Amend Compl. at 1-2. But if the theory is not new—and the Court agrees that it is not—then the motion to amend is unnecessary. As explained in further detail below, Cossio's "loss of reputation theory" is not any different than the due-process theory. In this sense, then, the amendment is unnecessary.[7]

### B. Illegal Search

Cossio alleges that the search that uncovered his court-martial conviction was an illegal search within the meaning of the Fourth Amendment. Second Am. Compl. ¶ 133. Specifically, Cossio asserts that Judge Tourtelot's "misuse" of criminal databases—such as the FBI's National Crime Information Center (NCIC) database—to access his criminal conviction record amounts to an unreasonable search and seizure. *Id*. The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable

---

[7]Relying on *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012), Tourtelot argues that Cossio waived his "loss of reputation theory." R. 231, Def.'s Resp. Br. ¶ 3. But in *Anderson*, the plaintiff omitted his disability discrimination and reasonable accommodation claims from his amended complaints and then failed to reassert them until his response to the defendant's summary judgment motion. 699 F.3d at 997. As explained below, Cossio's loss of reputation theory was in fact included in his complaint. The claim is, therefore, not waived.

10

cause." U.S. Const. amend. IV. "The touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy." *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (citing *Katz v. United States*, 389 U.S. 347, 360 (1967)).

There are two problems with Cossio's Fourth Amendment claim. First, no reasonable jury could find that Tourtelot was personally involved in the search of Cossio's criminal history. "Individual liability under § 1983 … requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (cleaned up). That means Cossio must show a causal connection between Tourtelot and the alleged misconduct. *See id.*; *see also Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation ... A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.") (cleaned up). Here, no reasonable jury could find that Tourtelot conducted any kind of search of Cossio's criminal history, nor did Tourtelot instruct anyone to look-up Cossio's court-martial convictions. *See* DSOF ¶ 9; R. 224-1, Def.'s Br., Exh. 1, Cossio Dep. Tr. at 46: 18-23. In fact, Tourtelot does not even have the ability to access, on his own, Cossio's court-martial conviction; nor does Tourtelot know if he can order the Sheriff's Office to do so because he has never done so in the past. R. 226-1, Def.'s Supp. Resp. to Pl.'s Third Set of Interrogatories at COSSIO 24 ¶ 8.

The second problem with the illegal-search claim is that a person does not have a reasonable expectation of privacy in his conviction record. *Willan v. Columbia Cnty.*, 280 F.3d 1160, 1162 (7th Cir. 2002). It follows from this that obtaining an individual's conviction record[8] from a criminal database and disseminating it does not amount to a Fourth Amendment violation. *Id.*; *Eagle v. Morgan*, 88 F.3d 620, 628 (8th Cir. 1996) (holding that the plaintiff had "no legitimate expectation of privacy in the contents of his criminal history file"); *Cincerella v. Egg Harbor Twp. Police Dep't*, 2009 WL 792489, at *3 (D.N.J. Mar. 23, 2009) ("Because a person has no reasonable expectation of privacy in the information in the NCIC database, searching a person's record through the NCIC database does not violate the federal or state constitution."); *Boroian v. Mueller*, 616 F.3d 60, 67 (1st Cir. 2010) (convicted offender does not have a reasonable expectation of privacy in information stored in a criminal database).

To rebut Touretlot's evidence, Cossio argues that additional discovery is necessary. Pl.'s Resp. Br. at 11. Pointing to Tourtelot's written discovery responses, Cossio suggests that Tourtelot might have at least known about Cossio's court-martial convictions before the hearing on the order of protection. *See* PSOAF ¶¶ 10-11 (citing COSSIO 5; COSSIO 24).[9] But there is no good cause to re-open discovery,

---

[8] At least one district court has held that a municipality's maintenance of individuals' *military* criminal records also does not implicate the Fourth Amendment. *See Pritzker v. City of Hudson*, 26 F. Supp. 2d 433, 439, 445 (N.D.N.Y. 1998).

[9] Viewing the record in the light most favorable to Cossio, he is right—there is a genuine dispute on whether Tourtelot knew about Cossio's court-martial conviction before the hearing. Typically, before a hearing on a proposed order of protection, Tourtelot receives a background check on every litigant from the Cook County Sheriff's Office. *See* Def.'s Supp. Resp. to Pl.'s Third Set of Interrogatories at COSSIO 24. A "typical" background check contains violent and non-violent state convictions, but not court-marital convictions. *Id*. This leaves reason to suggest that in perhaps *some* instances, an "*a*typical" background check can

which Cossio had every opportunity to take, in this four-year-old case. In any event, Cossio has no expectation of privacy in his conviction record, as explained earlier. So either way, the Fourth Amendment claim fails.

**C. Due Process**

On the due-process claim, Cossio alleges that he was deprived of his continued employment with the County and that his firing was procedurally unfair. *See* Second Am. Compl. ¶¶ 53-60. The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state claim for a procedural due process violation, a plaintiff must demonstrate (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Forgue v. City of Chicago*, 873 F.3d 962, 969 (7th Cir. 2017). "The cornerstone of due process is notice and the opportunity to be heard at a meaningful time and in a meaningful manner." *Knutson v. Vill. of Lakemoor*, 932 F.3d 572, 576 (7th Cir. 2019) (cleaned up); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Tourtelot does not dispute the first or second elements. The key issue is whether Cossio was deprived of due process. But here too Cossio runs into the same problem as he did in presenting the Fourth Amendment claim: there is no record evidence on which a reasonable jury could find that Tourtelot was *personally*

---

contain a litigant's court-martial convictions, if he has any. Tourtelot does not remember whether he received Cossio's criminal history on the day of the hearing. R. 226-1, Def.'s Resp. Pl.'s Request to Admit at COSSIO 5 ¶ 6 ("[Judge Tourtelot] is without sufficient knowledge to admit or deny whether he received Plaintiff's criminal background from the County prior to the order of protection hearing."). So the record does not dispositively show that Cossio's background check included the court-martial convictions.

responsible for the alleged violation. Tourtelot's involvement and interactions with Cossio are extremely limited and can be summarized as follows: (1) presiding over an order of protection hearing against Cossio; and (2) reporting a suspicious call to the Cook County Sheriff's Office. DSOF ¶¶ 3-4. Beyond that, the record shows that Tourtelot had no involvement in Cossio's subsequent firing—Tourtelot did not present evidence at the termination hearing, he did not speak with anyone presiding over the hearing, and he was not responsible for sending Cossio notice of the hearing. DSOF ¶8; Cossio Dep. Tr. at 42:20-43:1 ("[Tourtelot] has nothing to do with [the procedural due process claims] other than … that he was the catalyst if you will but he has nothing specifically involved in that."); *id.* at 46:9-17 (Cossio's contention against Tourtelot "is everything prior to the procedural due process."). Nor was the suspicious call even brought up during Cossio's termination proceeding. PSOAF ¶ 15; Cossio Dep. Tr. at 43:12-23. And except for one inadvertent missed redaction, any mention of Tourtelot and the reported call were redacted from all documents used during the termination hearing. Cossio Dep. Tr. at 43:12-18. Even viewing the evidence in Cossio's favor, Tourtelot cannot reasonably be said to have been personally involved in the alleged due-process violation.

In response, Cossio argues that Tourtelot "instigated" Cossio's firing by falsely accusing Cossio of calling Judge Tourtelot's personal phone. Pl.'s Resp. Br. at 8. This is where Cossio's loss-of-reputation theory, often called the "stigma-plus" theory of due process, comes in. Under this theory, a plaintiff may prove a deprivation of a protected liberty interest by showing that the defendant made a defamatory

14

statement, and that the defamatory statement caused an alteration in the plaintiff's legal status. *See Hannemann v. S. Door Cty. Sch. Dist.*, 673 F.3d 746, 753 (7th Cir. 2012) (citing *Wisconsin v. Constantineau,* 400 U.S. 433, 437 (1971).

According to Cossio, the record shows that he has satisfied the stigma-plus test. *See* Pl.'s Resp. Br. at 9-11. But Tourtelot is not disputing whether Cossio lost a property interest—the parties seem to be in agreement that Cossio's employment with the County was a cognizable property interest and that his firing was a deprivation of that property. Instead, the crux of Tourtelot's argument is that he had nothing to do with the alleged procedural due process violations that occurred during Cossio's termination proceeding. As described earlier in the Factual Background section, Tourtelot is right. There simply is no evidence, even viewed in Cossio's favor, suggesting that Tourtelot was personally involved in the termination proceeding. Touretelot is entitled to summary judgment on this claim

## IV. Conclusion

For the reasons discussed above, Cossio's motion to amend the complaint is denied, and Tourtelot's motion for summary judgment is granted. The status hearing of October 17, 2019 is vacated.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 30, 2019